Mr. Tarazos. Your Honor. All right. Your Honor, may it please the Court. There's three issues that I want to focus on today of why the summary judgment in this case was improperly granted and it needs to be vacated. The first is related to the statute of limitations and what I want to focus on particularly is the breach of contract claim and what was argued in the summary judgment was rejected by the magistrate judge. In addition, this is a very very unique contract. I've never seen something like this before where you don't have to buy anything and Plymouth didn't have to sell anything. It is more akin to a commission contract which is why our serial breach argument is important here to show that the breaches that happen after the fact each one of those are their own independent breaches. Did you raise this with the magistrate judge? Your Honor, we objected to the magistrate judge. Did you argue serial breach though before the magistrate judge? No, Your Honor, because it wasn't raised by Plymouth, by the appellee here in terms of what Plymouth raised in the breach of contract argument were two things. One was termination and repudiation and that was it. The magistrate judge rejected those arguments and Plymouth didn't appeal that, didn't object to that. We didn't know that the magistrate judge would go through the entire breach of contract claim and therefore we didn't have an opportunity to raise the serial breach argument because we didn't know that that was even going to be important to raise at that time. Didn't you have an opportunity to object to the magistrate judge's findings, conclusions and recommendations to address that before the district court? We did. We did. We raised that and presented to the district court which the district court noted that it reviewed de novo. The district court went beyond what the magistrate judge had done to do a de novo review and so that was, it's proper before this court in terms of the serial breach argument. In addition and I'm happy to continue on with the statute of limitations but also want to address the res judicata issue. I've got three points there as well that I'd like to address. One is related to the Doherty case and this is under Illinois law and the purpose of res judicata. Secondly, there's different parties in this case and the it determined in an adjudicative fact that was subject to reasonable dispute and that's the only basis that it used to determine that these are the same parties. And then in addition going into the same claims argument if we look specifically at what was raised by Powell Pro Steel LP in the Illinois suit, there are different claims than what were raised by Powell Pro LLC and she I'll bring it on behalf of Powell Pro LLC in this case. And then the last issue is discussed in terms of the discovery rule. So getting back to the statute of limitations arguments, in terms of the as we discussed before the claims that were raised and the arguments that were raised in the summary judgment by Plymouth as to statute of limitations were for the breach of contract as the termination and then for the fraud it was based on the 2016 suit in Illinois. But those fraud claims in the 2016 suit in Illinois were based on different arguments, different facts. So the fraud claim originally in the April 2016 filing of the counter claims by Powell Pro Steel LP were based on a what they claimed to be a misrepresentation in 2014, June of 2014 that said that Plymouth would continue to manufacture products for Powell Pro Steel LP in the same quantities and type as what they had historically done. In the July 2016 iteration it changed it and said that there was fraudulent inducement for the 2011 contract. Those were different claims than what Sheetpile raised in this suit. Sheetpile raised in this case that there was fraud based on the 2014-2015, particularly 2015 statements that Plymouth was not going to get back into the business at all. And in fact it chastised Sheetpile for when it, sorry, it chastised Powell Pro making an assertion back in August of 2015 that it was that Plymouth was selling products to Nucor, Skyline and those type of things and that was getting back into the business. In fact it specifically says and I quote this is on record 643, why can Powell Pro just not accept the fact that we are out of the business of making their products for a mutual agreement for them or anyone else? And it basically said that Powell Pro was crazy to think that somehow that Plymouth was getting back in the business and was selling some products to Skyline. Now Plymouth had a history of selling to Skyline before which is why it was entered into that 2011 contract that there was allegations of that Plymouth was violating the contract before and so instead of suing one of the provisions in that contract says that we're not going to sue each other for prior breaches of this. We're going to enter into this contract. This contract itself though said again very oddly Plymouth doesn't have to make any products and Sheetpile doesn't have to buy any products. What has to happen though is that if Plymouth does sell products it's got to sell it to Powell Pro. That's where this is more like a commission type contract. Just like in a salesperson actually sell products but they don't get paid until they do and each order individual order is what determines the damages and of course in Texas law there's four elements for breach of contract. Got to have a valid contract, performance, breach, and damages. If you don't have damages there is no contract and here this is an order-by-order basis for everything that Plymouth after the fact in terms of any sort of breach. Just like in the contract itself it says that if Powell Pro bought products from Plymouth that would be on an order-by-order basis and each order would have its own specific requirements and those type of things. But the first time that Plymouth sold to someone else they violated they breached the exclusivity provision correct? They breached it for that order. But I mean . . . Yes sir. How is that different than if they continue to sell to someone else other than Powell Pro? Well, for example in what the district court relied on was that new case from Michigan as an example of that was a distributorship contract. In a distributorship contract you know that there's products that are going to be made and generally speaking they're going to sell a just range of products to the distributor who then goes and distributes them. It is . . . But the district court also distinguished like installment sale contracts and that's clearly not what this is. And I agree with that your honor but it's not it's not like a distribution contract and I agree it's not like an installment contract. Maybe not but doesn't doesn't your argument sort of undermine itself? I mean in other words if it's per order but it's periodic no no no interval or anything like that it seems like the first time they sell to somebody else that's a breach. It is your honor but it's just like with a commission contract and again with a commission contract each commission is considered to be its own breach. When the first failure to pay on a commission at the beginning that's a breach but the second failure to pay on the commission is also a breach and it's a separate breach and Texas courts have held that that separate breach that second breach is a standalone breach of that contract of that commission contract such that it would start the statute of limitations again. So that's where I'd see the difference in there is because there wasn't a requirement to buy because it wasn't a requirement to sell it is more akin to something like a commission contract where each individual breach forms the basis of a breach of contract action that would start the statute of limitations over. In terms of the res judicata argument I think that the. Well before you leave that argument. Yes your honor. Back to my initial question I may have interrupted you too early and I believe that you raised this before the magistrate judge or you did not raise it before the magistrate judge. We did not raise it for the magistrate judge your honor we didn't believe. In the objections to the magistrate judge report recommended. We did your honor. The district court said well you didn't raise it before the magistrate judge therefore it's forfeited. So. Do I go under the law? Well the issue was your honor is that we didn't know we had to raise it for the magistrate judge. There wasn't a limitations argument being made before the magistrate judge? Yes your honor we didn't waive the the issue. Of course you can waive issues but you can't waive arguments. We didn't waive the issue. That was raised before the magistrate judge. That was objected to before the magistrate judge. You didn't raise this ground before the magistrate judge that's that's forfeiture isn't it? No your honor it's not because the one the district court also addressed it. And so the district court said that wasn't raised for the magistrate judge but then addressed it on its own. So it's sort of an even if addressing it. And I understand that your honor but again I don't know how she how could have raised this before the magistrate judge when the only arguments raised by Plymouth were related to repudiation and termination. The magistrate judge denied those but then went beyond and so we didn't know that that was even an issue until the magistrate judge rendered its report recommendations and that's when we addressed it before the district court. Before it got on appeal. In terms of the the res judicata argument in your honor I don't want to if you have further questions on that. No thank you for that I'll have to go back and square the magistrate report and recommendation with what the district court said in its order. Yes your honor. Under the res judicata I'd like to focus a little bit on the Doherty case which is seventh circuit case applying Illinois law. Of course for res judicata we need to apply Illinois law in this case. I don't think it's much different from Texas law but it's it has some jurisprudence related to that. And the key thing for the Doherty case I think the key thing for res judicata overall is the point of res judicata is to prevent a collateral attack of a prior judgment. And here just like in the Doherty case in its analysis there's nothing that happens in this case that could possibly collaterally attack what happened in the 2016 Illinois lawsuit. And so Doherty goes through a series of cases including from the Illinois Supreme Court and it said for example quote the Illinois Supreme Court has held that if the basis of dismissal against one party bears no relationship to the merits of the case it is inappropriate to apply the doctrine of res judicata against another party to that action. Basically what it was saying for that as well as it also talked about how the prior dismissal must have caused the defendants to prepare a defense against that cause of action. It's one of the things that was key in that case. Here there's no evidence that Plymouth ever had to prepare a defense against any breach of contract or fraud action that was here in this case. And so res judicata is inappropriate just like in that Doherty case. In here it would not serve the ends of what res judicata is. So what is what is your best Illinois case is it Doherty or something else that stands for the proposition that Powell Pro Steele and Powell Pro LLC were not in privity for res judicata purposes? Absolutely. Your Honor I would go to actually a Fifth Circuit case on that which is the Taylor v. Charter Medical Court case because the only evidence that they were in privity. What state law is that applying? Your Honor I think it's I don't remember why but it's in the Fifth Circuit but it's citing to a, sorry Your Honor, sorry it's citing to that the Astron case in the Fifth Circuit cites to a US Supreme Court case talking about to show privity you need to show control. You need to show the parties that the Powell Pro LLC was in control of Powell Pro Steele LP at that time and that's the Lawler v. National Screening Service Corporation case. It's 349 U.S. 322. It's cited in the Astron case and the the issue here is the only evidence that was presented, strike that, the only evidence that was cited to by the district court was taking a an adjudicated fact that was in dispute in applying it here and under the Taylor case looking at rule 201 that's improper because here it is in reasonable dispute. We still there's nothing in the record today that says that Powell Pro Steele LP is anything other than either a subsidiary or affiliate and it actually doesn't even say which one and we only get that from the 2011 contract that talks about how this applies to Powell Pro as well as its subsidiaries or affiliates. That's on record site 665 and so what happened was is the district court has said that there's the same parties here simply because it's taking this fact from another lawsuit that it's not allowed to do and so therefore we don't have. Do you dispute that Powell Pro Steele LP was the quote operational arm of Powell Pro, the Powell Pro entities? We do, Your Honor. We do dispute that. Where is that in the record? When you're saying. I mean, that is to the contrary of what the district court found here. Well, Your Honor, there's not evidence either way. The district court simply took a something from another case, applied it in this case, that wasn't raised below. Are you talking about the Chang case? Yes, Your Honor. The reported fed sub third case that the district court cites to? Yes, Your Honor. Absolutely and I understand that but under this court's precedent, you can't dispute that unless it is not subject to reasonable dispute and here that's one of those facts that absolutely is subject to reasonable dispute. I don't even know exactly what operational arm of Powell Pro means. That doesn't say that Powell Pro controls Powell Pro Steele. It doesn't say that there's really much of anything but the court took that and said this is an adjudicative fact. I'm taking judicial notice of it which it didn't need to. Doesn't the exclusivity agreement say that it is between Plymouth and quote Pyle Pro LLC together with its subsidiary and affiliates, including but not limited to Pyle Pro Steele LP. And yes, Your Honor, it does because the point here is whether or not these parties were in privity in terms of whether or not they were Powell Pro LLC would have to be referenced in this underlying contract? Yes, Your Honor. Yes, Your Honor, because it has to be to show that Powell Pro Steele, the test is whether or not Powell Pro Steele is basically sitting in the exact same shoes as Powell Pro LLC. That it is that the same same interest, same everything is being represented by Powell Pro Steele and you have to have evidence of that showing that there is some sort of control or otherwise under the Ashton case as well as that citing to the Lawler v. National Screen Service Corporation from the United States Supreme Court. Last thing I want to, I've got limited time here, but the last thing is in terms of the same claims. So there were not the same claims either in the 2016 suit or the claims here. For breach of contract just on its own, I would say that it talks about the breach being in quote subsequent to October 31st, 2011. Here the claim was at least from 2013 after. So we're talking about there's at least separate claims. Your Honor, I apologize, I'm out of time. Let me finish this. No, finish your point. Thank you, Your Honor. Here there's at least differences in that one. I've already talked about with the fraud claim, how the fraud claim was separate and therefore because the claims are these, the res judicata cannot apply. Thank you, Your Honor. Thank you, Mr. Terrazas. We'll see you back on rebuttal in a few minutes. Mr. Carlisle. Good morning, Your Honor. Good morning. May it please the court, my name is Ethan Carlisle. I represent the defendant Plymouth 2 Corporation, Plymouth 2 Company. It's simple, we believe Judge Ezra's well-reasoned opinion adopting Magistrate Lane's report and recommendation granting summary judgment for my client, Plymouth 2, in the underlying case was correctly decided and should be affirmed. There were no genuine issues of material fact on the issues that we moved on and we addressed all of their claims and there were even multiple arguments on claims. So if there is anything that the court disagrees with, there are avenues to affirming that judgment in full. So I do want to point out at the start, there was some discussion by my friend on the other side about res judicata and fraud. We never moved for res judicata on fraud. We moved for res judicata on breach of contract and that's clear in the underlying documents. So yes, Pyle Pro did sue us in counterclaim for breach of contract and fraud back in 2016 and now Pyle Pro LLC is suing us for breach of contract and fraud. The fraud allegations between those two proceedings are different, but the breach of contract is not. That's why we only moved for res judicata on breach of contract. We moved for statute of limitations on both grounds. I think that's all clear in the background. I just wanted to clear that up. Okay, so, you know, the, I don't know the law, Your Honor. I admit on the magistrate, you don't do a ground, you don't object to a ground in there, but you object to the whole thing later. You know, I think it's a little dirty pool because we would have duked it out back then if they had brought it up. What about counsel's argument that they wouldn't have known to raise the serial breach issue? Yes, so, I don't need that. That's in this outline. All right. In our, it was in our reply, and this is a record on appeal 956. This is our reply in the summary judgment. So this, you know, we moved. They responded. We replied. This is all before the reporting recommendations. We said, you know, we did argue that the termination of the agreement could be the start. But we said, if you don't buy that, and I quote, even if the breach is defendant sales of connectors and not the termination of exclusivity rights, plaintiff admits that this lawsuit was filed in November 2020. It was more than four years after the alleged breach. So I think if they had a problem with that, they could have asked to address that with the magistrate at that time. And it was in your reply brief? It is in the reply brief. What did you raise in your primary brief? In the primary brief, we argued that the termination was the start. So you didn't argue then that the date? I have to go back and dig in it. I, maybe it's in there, but we did say that the termination was the start. And I'm not positive if we also said that sales of connectors was the start as well. But I don't think it matters. And that's why I admitted, you know, if you let me just grab it because the court was correct anyway when it addressed it. Like your honor said, this is nothing like an installment contract. It is nothing like a commission agreement. Okay. And in the cases that the plaintiff cited for that argument or in the brief, it's Barker-Eckman. I call that the Bull Seaman case. And then they have Garden Ridge. So in Barker-Eckman, that was a bailment. Okay. So in those types of cases, bailments, alimony, installment contracts, during the period, there's a new event or a new triggering something that triggers a payment from the obligor or the obligee to the obligor, right? A new month, you got to pay a new alimony check. Okay. A commission, salesman makes a sale, you got to pay, right? You got to pay him a commission or an installment contract, you know, could be like a lease or something where, you know, you're paying on time. That's not the situation here. Okay. And in all of those types of cases, there's something new that happens. Well, I just sold to John. And under our agreement, when I sold to John, you have to pay me, okay, for an alimony. It's now a new month. When it's a new month, you have to pay me. And here, we made one promise, okay, which is as long as this agreement isn't terminated, it isn't in place, we will not sell connectors to other people. Okay. And nothing changed. We, you know, it's on the record, they didn't pay us for some connectors. They also didn't pay us for some attorney's fees where they had an obligation to indemnify us. And we said, fine, we're terminating exclusivity. Then we start, we had to deal with that case where they were not was, okay, Skyline, you're suing us. They're not defending us anymore. Uncle, we've terminated. We're going to start making connectors for you. Okay. That's a confidential settlement agreement. Right. But that was the circumstances. So now we're banging out connectors for Skyline. Okay. Nothing's changed from then until the end of this termination period. We, it's the same conduct making exclusivity products for others. And that's why those other cases simply don't apply. I have a question. Sure. So in the April 20th, 2015 letter, when Plymouth alleges bad faith in part for failing to honor the indemnity agreement, the indemnity agreement was in relation to the litigation with selling product to Skyline? Correct. That's absolutely correct. So anything in the record that Pile Pro or Sheet Pile was aware of that lawsuit and the issues alleged in that lawsuit? Yeah, they were a party to it. So, so yeah. And then after we settled, it was dismissed and they received a notice of that the claims against Pile Pro are continuing. We're just letting Plymouth out. Is that, is that clear? And at issue in that lawsuit was the exclusivity agreement between Pile Pro and Plymouth? Yeah. It was an anti-competition lawsuit. They were like an antitrust or something. They were saying, y'all's agreement that you can only make connectors for them and not other people in some law firm. Okay. So that's breach of contract. I, I think that's covered. It's now let's talk about, we talked about serial breach. There wasn't a whole lot of discussion about discovery rule. I mean, that's on breach of contract and fraud. I think that's a no brainer. Okay. On April, 2016, Pile Pro Steel LP sued us and it counter claimed and says, you're making connectors for others. Okay. You started, you've been, you made connectors for others after the agreement. That's the exact same allegation they're making now. You're making connectors for others. So there's, it's, it's the same claim and it's, uh, therefore, uh, I got lost on my own here. Okay. The claim is the same. The conduct is the same and there's really nothing different between those two allegations. And if you look at Judge Ezra's opinion and Judge Lane's report and recommendation, they lay out right above each other, the two allegations and the two proceedings, and they show that they're the same. And, and so it's really a no brainer. Um, and now let's talk about, you asked a question, uh, Judge, Justice Willett about the record. So let's talk about that. And, and here's something I just found this morning, but it's in the record and this court can affirm summary judgment on anything in the record. The, the letter, August 11, 2014 letter that my client sent to Pile Pro saying. What's the record site for that? I'm sorry about that. It's a 641. It's the style of the case. And then it says dot 641. That letter that Plymouth sent to Pile Pro saying, Hey, we're getting out of the, out of the extrusion of carbon steel business. Um, we're not going to, you know, we'll, we'll finish up the orders you've given. We're not going to make any more. That letter was sent to Pile Pro steel LP. Okay. Guess what's Pile Pro LLC is suing us saying this letter, the statements in this letter were fraudulent. How does that not show privity right there? I think that's getting said match. They're suing us for a statement that we made to their subsidiary and affiliate, who's also the co-signer of the agreement. It shows that their interests are aligned. Okay. They're the same interest. And, and that's really, you know, so the evidence is you talked about it identical. They're both parties to that agreement. I think that shows privity. There's been no showing that they have different interests. You asked the question, well, do you dispute to the operation arm? Yeah, we do. Is any of that on the record? No. If I'm representing someone and someone says, Hey, that judgment back there was raised unicata. You can't sue me now. And I go, that wasn't me. That wasn't me because they're different owners, they're different managers. That one does this. I do that. None of that's in the record. We put enough in the record to show privity. It was their burden to say, uh, and that didn't happen. So what is in the record? Same agreement. They both signed the agreement. They have the same obligations to us. Pile Pro Steel and Pile Pro LLC. We have the same obligations to them. Identical. There's an identity of interest. They're co-obligors under that agreement. Under Illinois law, co-obligors are in the record. This is record site 638 through 639. Robert Wynn is the managing member of Pile Pro LLC. He is also the managing member of F Sempe LLC, which is the general partner of Pile Pro Steel LP. Okay. He signed an agreement, an identity agreement in those, uh, you know, with the, uh, you know, with the signature block stating that. That shows that he, that they have the same manager, the same guy running both companies. That shows privity. You could also see privity just by looking at the claims of the exact same claims, which shows an identity of interest. You have the, they're, they're subsidiaries and affiliates. Um, Mr. Wynn also, this is in the record site 940. He, when he's trying to say, oh yeah, I know we sued him back here in, in April and then amended in June of 2016. But you know, that, that shouldn't be held against us because we, although we sued him and an 11, you know, we didn't have any evidence. Okay. Well, how does he know that? Unless he's running the show, right? And he is running the show because I just showed it. He's the managing member of the general partner of Pile Pro Steel and he's the managing member of LLC. So he is controlling both and Pile Pro LLC is controlling both entities. Um, and then we do have, yes, there's a, a, a, a, a reported decision that said that where Judge Sparks sat through a long trial. And if you read that, it's a, it's an interesting opinion and he starts it out and he talks about, he gives a cautionary tale of greed to all the parties in that case and anyone reading that case about what happens when, when people focus on money and not trying to do the right thing. And, and he does say in there, he says, everyone's using the name Pile Pro and no one, both parties don't really tell me which Pile Pro it is that issue. But he does say that Pile Pro Steel LP was the operational arm of the Pile Pro entities. We asked, uh, Magistrate Lane and then Judge Ezra to take judicial notice of that. They did in the case, they said, Hey, don't do that. Here's the evidence. We have nothing to do with them, right? But there's no privity here. Our interests aren't aligned. Here's why they didn't do that. The rule says you can request to be heard on judicial notice and they never did file a request. Finally, I think it's also collateral stopping. I mean, that issue was decided. There was a prior lawsuit and this has been the opinion. So I think they're stopped from saying, no, we're not the operational arm of the Pile Pro entities. Okay. Reach a contract. Raise to your condo. There are a few things that I want to point out just to make sure in case this court does, is not buying anything that I just said. In the reply, and you never know when someone files a reply, like if you disagree with something, should you file a response or bring it up in argument? So I'm bringing it up in argument. In their reply on appeal, this is in their reply brief, reply brief at page eight and then again at page 22. So at page eight, they said, you know, while Pile Pro Steel LP surmised that Plymouth might be breaching the agreements in 2016, Plymouth denied those things, prompting Pile Pro Steel to abandon that counterclaim. That, and there's no record site for that in their statement and that's not true. We told them, you know, you mentioned that email, the where we said, hey, if you don't pay us, we figure email might get back into business. It's not something we want to, but we may be forced to do it. And then we sent them a letter officially terminating. They never called and said, are you making connectors for anybody else? They never asked us. And that underlying, in that Illinois litigation, they never served a discovery request saying, are you making connectors for others? So the statement that we denied making connectors after we terminated is, is wrong and there is no evidence of that. And then they repeat that same thing on page 22. Uh, the plaintiff, the appellant here says it should not be lost on the court that Plymouth outright denied selling to others in 2016. That's not true. A couple other cleanup points. Down below, we argued to Judge Lane and Judge Ezra, if you don't buy any of this, well, they were judicially dissolved. Okay. Powell Pro LLC, that's the party that we had the agreement with, was judicially dissolved in September of 2018 and then filed bankruptcy in March of 2019. So we said, even if it's not barred by duty, copyrights to the con and not barred by limitations, the agreement itself says it terminates upon the cessation of Powell Pro LLC doing business or Powell Pro LLC filing for the bankruptcy without a reorganization. And we said, therefore, even if you don't buy anything, what we said, the cutoff date should be September 2018 when they were judicially dissolved and that opinion is in the judge's record. It's in the judge's opinion and it's in the record. And then we also said, if for some reason the judicial dissolution doesn't terminate the agreement, the bankruptcy should. Powell Pro responded to our that's the end of the agreement. They did not respond to the judicial resolution argument that we made. Uh, Magistrate Lane caught on that and he said, you know, should. And so this is in Magistrate Lane's opinion, which was adopted in its entirety by the District Court Judge Ezra. Uh, Magistrate Lane said this is record site 977 through 978. Should any of Powell's claims survive summary judgment, Plymouth argues in it cannot be liable for sales of exclusivity products to third parties after Powell Pro filed for bankruptcy or was judicially dissolved. He talks about how they agree the bankruptcy terminated it. And then Judge Lane says, but she, Powell did not respond to Plymouth's argument that Plymouth cannot be liable for sales after the September 2018 judicial dissolution. It therefore waived that argument. And so, uh, that then went to Judge Ezra. He adopted the opinion, and that is not up on appeal now. They haven't said there was a note in the reply brief footnote six on page seven of their reply brief that that judicial dissolution. I'm out of time. Thank you, Your Honor. Thank you, Mr Carla. We appreciate it. Mr Tarazos, you're back with three minutes. How much time? I want to address it a few points in some of the questions that were asked. Judge Ramirez, one of your questions in terms of that skyline litigation with Plymouth that was in a competition suit. So when we talk about the indemnification, the indemnification under the 2011 agreement was for patent infringement. It was something that was separate there, and Plymouth did settle with Skyline in a confidential settlement agreement that wouldn't release any details to anyone. There is no way for Powell Pro to know at that time that Plymouth was deciding to reenter the market to sell any products whatsoever. So you can't say that because it was an anti competition suit that somehow because there's a settlement that Papa would have any idea that there is any sales that were going on. And to be very clear, in April of 2016, when the counterclaims were filed, there were no sales that were done by Plymouth. It had not breached the exclusivity agreement at that time, and there is no way for Papa to know. It did ask in 2015 and got a statement that said, if you possibly think that we're doing this, we're not entering the market. We have no intent in the market whatsoever. We're not gonna sell products for anyone. So there's no way for Papa to have known during that time of what's going on. I do wanna point out in terms of, again, in the summary judgment brief, and this is on, excuse me, record 520 to 521. We're talking about the privity argument and what arguments were made by Plymouth. The only argument was made was that the parties to the counterclaim are effectively identical to the parties to the instant action as Sheetpal acquired all of Palpro in bankruptcy, including the rights to any legal claims. And it says, as Palpro's assignee, Sheetpal stands in Palpro LLC's shoes. And then it talked about in the counterclaim that somehow Palpro steal LP, that it was a party to the agreement and didn't take any efforts to distinguish itself from Palpro LLC. That is the sum total of what was argued in the summary judgment as to privity. There was never a request in that motion to take judicial notice of another case that Palpro was somehow, or Palpro steal was somehow the operational arm of Palpro. And so that wasn't addressed until we got to the district court's opinion, and that was improper under Fifth Circuit law. And also, the last point I'll make is that being a managing member of an LLC does not establish privity. Privity is between entities, not between people. You can have a relationship of the same manager among multiple different entities, and that does not establish that there is privity between the entities itself, as long as they're obeying the corporate formalities. And there's no evidence here that Palpro steal and Palpro were not obeying the corporate formalities. One quick limitations question. Yes, Your Honor. Are you aware of any Texas authority, can you point to any Texas case that has applied the discovery rule to a breach of contract claim? No, Your Honor. I don't know of any that have applied it. The Vianette case from the Texas Supreme Court has said it doesn't foreclose it. Right. And Your Honor, I know I'm out of time if I may, just for 54 seconds. Again, I think that the key here is the very uniqueness of this contract. This is a contract where you would not know that there is a breach until it actually occurred and somehow you got notice of it. It's not something where you'd be expecting, especially when Plymouth said that it's not going to sell any products, that you wouldn't expect that there would have to be products that were sold such that you would expect that there could be a breach at any point. And it went for over a year. Okay. Thank you, both. The case is submitted. Thank you.